UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
UNITED STATES OF AMERICA,

         -against-                             MEMORANDUM OF
                                                  DECISION & ORDER
LARRY CARPENTER,                            18-cr-362 (ADS)

                        Defendant.
---------------------------------------------------------X

**APPEARANCES:**

**United States Attorney's Office, Eastern District of New York**
610 Federal Plaza
Central Islip, NY 11722
      By:    Monica K. Castro, Assistant U.S. Attorney

**Federal Defenders of New York, Inc.**
610 Federal Plaza
Central Islip, NY 11722
      By:    Tracey L. Gaffey, Assistant Federal Defender


**SPATT, District Judge**:

        Presently before the Court is a motion by Larry Carpenter ("Carpenter" or the "Defendant"), pursuant to Federal Rule of Criminal Procedure ("FED. R. CRIM. P." or "Rule") 7 and 41, seeking to (1) dismiss Count One and a portion of Count Two of the superseding indictment; (2) suppress two cellular devices; (3) obtain a bill of particulars; and (4) strike the indictment for surplusage. For the following reasons, the Defendant's motion is denied in its entirety.

### I. BACKGROUND

        On June 24, 2018, Carpenter was arrested in East Farmingdale, New York. The arrest stemmed from two alleged drug sales: one where the Defendant purportedly sold 1.3 grams of

1

crack-cocaine to Scott Allen, and the other where the Defendant allegedly sold 2.5 grams of heroin to a law enforcement operative. The Defendant ostensibly carried out these transactions while seated in the passenger seat of a vehicle (the "Vehicle"). A firearm and two cellular devices (the "Devices") were recovered from the passenger seat of the Vehicle. The next day, Carpenter appeared in front of Magistrate Judge A. Kathleen Tomlinson, who entered an order of detention.

On July 13, 2018, based on an affidavit (the "Affidavit") by Drug Enforcement Administration ("DEA") Special Agent Francis X. Rau ("Special Agent Rau"), Magistrate Judge Gary R. Brown signed a warrant (the "Warrant") for the search of the Devices. *See* Dkt. 38-1. Three days later, Special Agent Rau executed the return on the Warrant, stating, under penalty of perjury, that on July 16, 2018, the Devices were submitted to a forensic examiner in the DEA's New York Division for analysis.

On July 18, 2018, a grand jury returned a four-count indictment, charging the Defendant with the distribution of cocaine base and heroin; the use of a firearm in furtherance of a drug crime; and being a felon in possession of a firearm. Carpenter entered a plea of not guilty before Magistrate Judge Tomlinson and waived speedy trial until September 14, 2018. On August 23, 2018, the government provided defense counsel with initial discovery disclosures, including a copy of the Warrant, pursuant to Rule 16. The government also provided additional discovery on August 31, September 10, October 12, November 6 and November 9, 2018. The Devices were analyzed by the DEA on August 30, 2018, and September 11, 2018. Thirty days later, this data was produced to the Defendant.

At the September 14, 2018 status conference, Carpenter waived speedy trial until October 19, 2018. He appeared on October 19, 2018 and at that hearing pled guilty to distributing cocaine base and heroin. The Court set a trial date on the remaining charges for December 3, 2018.

On November 7, 2018, the government filed a superseding indictment, which added a charge of Conspiracy to Distribute Cocaine Base ("Count One"); augmented the existing firearms charge ("Count Two") to include the allegation that Carpenter used, carried or possessed a firearm in connection with Count One; and added the allegation that the Defendant is also known as "Kontraversy."

On November 19, 2018, the instant motion was filed. By December 14, 2018, it was fully briefed.

On December 12, 2018, the government filed a second superseding indictment, which augmented Count One to include the allegation that Carpenter conspired to distribute heroin in addition to cocaine base. The Defendant was arraigned on the second superseding indictment on December 26, 2018.

Trial is currently scheduled for January 15, 2019.

## II.  THE MOTION TO DISMISS

The Defendant contends that the superseding indictment fails to state an offense against him regarding Count One and a portion of Count Two because it does not allege an agreement, as required by the statute.

Rule 7(c)(1) requires an indictment to "be a plain, concise and definite written statement of the essential facts construing the offense charged." FED. R. CRIM. P. 7(c)(1). "An indictment is sufficient when it charges a crime with sufficient precision to inform the defendant of the charges he must meet and with enough detail that he may plead double jeopardy in a future prosecution based on the same set of events." *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992) (citing *Russell v. United States*, 369 U.S. 749, 763-64, 82 S. Ct. 1038, 8 L. Ed. 2d 240 (1962)), *cert. denied*, 504 U.S. 926 (1992).

3

To comply with Rule 7, an indictment must inform the accused of the crime with which he has been charged. *United States v. Doe*, 297 F.3d 76, 87 (2d Cir. 2002) ("By informing the defendant of the charges he faces, the indictment protects the defendant from double jeopardy and allows the defendant to prepare his defense."). In the Second Circuit, the government is required to "do little more than track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1999) (quoting *United States v. Tramunti*, 513 F.3d 1087, 1113 (2d Cir. 1975)).

"An indictment must be read to include facts which are necessarily implied by the specific allegations made." *Stavroulakis*, 952 F.2d at 693 (internal citations omitted); *see also United States v. Sabbeth*, 262 F.3d 207, 218 (2d Cir. 2001) ("[A]n indictment need not be perfect, and common sense and reason prevail over technicalities."). Yet, "for an indictment to fulfill the functions of notifying the defendant of the charges against him and of assuring that he is tried on the matters considered by the grand jury, the indictment must state some fact specific enough to describe a particular criminal act, rather than a type of crime." *United States v. Pirro*, 212 F.3d 86, 91 (2d Cir. 2000).

The Court accepts as true the allegations set forth in the indictment for purposes of determining the sufficiency of the charges.

The superseding indictment alleges that Carpenter "knowingly and intentionally conspire[d] to distribute and possess with intent to distribute [280 or more grams of cocaine base]," between September 2015 and June 2018. *See* Dkt. 33 at 1-2.

To establish a conspiracy, the government must demonstrate "[an] agreement among two or more persons to join in a concerted effort to accomplish an illegal purpose." *United States v. Parker*, 554 F.3d 230, 234 (2d Cir. 2009) (citing *United States v. Bayer*, 331 U.S. 532, 542, 67 S.

Ct. 1394, 91 L. Ed. 1654 (1947)); *accord United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1191 (2d Cir. 1989) ("The gist of conspiracy is, of course, agreement."). "As a literal matter, when a buyer purchases illegal drugs from a seller, two persons have agreed to a concerted effort to achieve the unlawful transfer of the drugs from the seller to the buyer." *Id*. Yet, in this Circuit, "the mere purchase and sale of drugs does not, without more, amount to a conspiracy to distribute narcotics." *United States v. Brock*, 789 F.3d 60, 63 (2d Cir. 2015). This recognizes the reality that a conspiracy does not arise merely because a buyer and seller transact narcotics. "[I]n the typical buy-sell scenario, which involves a casual sale of small quantities of drugs, there is no evidence that the parties were aware of, or agreed to participate in, a larger conspiracy." *United States v. Hawkins*, 547 F.3d 66, 71-72 (2d Cir. 2008) (citing *United States v. Medina*, 944 F.2d 60, 65 (2d Cir. 1991)).

As the government notes in its papers, the Defendant theorizes that the government's case against him is limited to a buyer-seller relationship. This type of conjecture is premature at this stage of the proceedings. The Defendant's argument is based on his own analysis of the evidence that the government will present during trial. Without seeing all the evidence to be presented at trial, the Court is unable to characterize the government's case as a simple buyer-seller relationship and declines to dismiss the relevant portions of the indictment prior to trial.

The vast majority of the cases cited in support of the Defendant's motion to dismiss were decided on appeal after all of the evidence was presented and the government obtained a conviction. In such an instance, a court could evaluate whether the government proved the necessary elements to constitute a conspiracy. *See, e.g.*, *United States v. Mittal*, No. 98 Cr. 1302, 1999 WL 461293, at *6 (S.D.N.Y. July 7, 1999) (collecting cases).

Carpenter contends that the government has made a full proffer of the evidence it plans to present at trial. Citing only a single case in his papers where a motion to dismiss was granted prior to trial, *United States v. Alfonso*, 143 F.3d 772 (2d Cir. 1998), he argues that the instant motion to dismiss is ripe for decision. In *Alfonso*, the Second Circuit held that the district court acted prematurely in ruling on a motion to dismiss to the extent the district court looked beyond the face of the indictment and drew inferences of proof that would be introduced at trial. *Id*. at 777-78. Yet, Judge Cabranes noted that if "the government has made what can fairly be described as a full proffer of the evidence it intends to present at trial," the district court may address the sufficiency of the evidence in a pretrial motion to dismiss. *Id*. at 776-77. In support of this assertion, the *Alfonso* Court cited *United States v. Mennuti*, 639 F.2d 107 (2d Cir. 1981), asserting that "in [*Mennuti*] the government had filed an affidavit making a full proffer of the evidence to be presented at trial." *Alfonso*, 143 F.3d at 777. In the instant case, the government has filed no such affidavit and does not assert that it has made a full proffer. As such, *Alfonso* and *Mennuti* do not compel the Court to prevent a trial on the merits regarding Counts One and Two.

Regardless, the Government has sufficiently alleged a conspiracy in the superseding indictment. The language used in the indictment roughly mimics the language and elements of the relevant statute, and includes the time period, location and nature of the crime alleged. *See United States v. Elliott*, 363 F. Supp. 2d 439, 450-51 (N.D.N.Y. 2005) (holding that an indictment which "recites the approximate time and location of the conspiracy, specifies the object of the conspiracy, alleges an illicit agreement between the defendant and others, and cites the underlying statutory authority …. protects the defendant from Double Jeopardy and, together with the discovery ordered, permits him to adequately prepare for trial."). Here, the indictment "contains the elements of the offense" and "sufficiently appraises the defendant of what he must be prepared to meet" at

6

trial. *Russell*, 369 U.S. at 763-64 (internal citations omitted). The relevant portions of Counts One and Two are adequately pled in the superseding indictment.

Accordingly, the Defendant's motion to dismiss is denied in its entirety.

### III.  THE MOTION TO SUPRESS

The Defendant seeks to suppress information extracted from the Devices because the government purportedly failed to execute the Warrant within the time period prescribed by the Warrant and Rule 41.

Rule 41(E)(2)(B) states:

> **Warrant Seeking Electronically Stored Information**. A warrant under Rule 41(e)(2)(A) may authorize the seizure of electronic storage media or the seizure or copying of electronically stored information. Unless otherwise specified, the warrant authorizes a later review of the media or information consistent with the warrant. The time for executing the warrant in Rule 41(e)(2)(A) and (f)(1)(A) refers to the seizure or on-site copying of the media or information, and not to any later off-site copying or review.

FED. R. CRIM. P. 41(e)(2)(B). "As the text makes clear, Rule 41(e)(2) is a codification of courts' recognition that on-site searches of computer hard drives are infeasible and that courts should authorize later, off-site searches (often in the government's forensic laboratories)." *United States v. Loera*, 182 F. Supp. 3d 1173, 1237 (D.N.M. 2016) (internal citations and quotation marks omitted). The advisory committee's notes to the 2009 amendments clarify that Rule 41(e)(2) was intended to broaden the scope of digital searches:

> **Subdivision (e)(2).** Computers and other electronic storage media commonly contain such large amounts of information that it is often impractical for law enforcement to review all of the information during execution of the warrant at the search location. This rule acknowledges the need for a two-step process: officers may seize or copy the entire storage medium and review it later to determine what electronically stored information falls within the scope of the warrant.
>
> …

> In addition to addressing the two-step process inherent in searches for electronically stored information, the Rule limits the 10[14] day execution period to the actual execution of the warrant and the onsite activity. While consideration was given to a presumptive national or uniform time period within which any subsequent off-site copying or review of the media or electronically stored information would take place, the practical reality is that there is no basis for a "one size fits all" presumptive period. A substantial amount of time can be involved in the forensic imaging and review of information. This is due to the sheer size of the storage capacity of media, difficulties created by encryption and booby traps, and the workload of the computer labs. The rule does not prevent a judge from imposing a deadline for the return of the storage media or access to the electronically stored information at the time the warrant is issued. However, to arbitrarily set a presumptive time period for the return could result in frequent petitions to the court for additional time.

FED. R. CRIM. P. 41(e)(2)(B), cmt. to 2009 Amend.

Carpenter contends that the Warrant requires the Devices to be copied prior to the 14-days authorized by Rule 41. This contradicts the language of the Advisory Committee's Notes, which explain that the 14-day time limit only applies to "the actual execution of the warrant and the on-site activity," not to "any subsequent off-site copying or review of the media or electronically stored information." *Id*.

Here, the searches of the Devices were conducted in compliance with Rule 41. The devices were seized on June 24, 2018 and the Warrant was signed on July 13, 2018. The Warrant authorizes the search of the devices on or before July 26, 2018, in accordance with the timing requirement of Rule 41. On July 26, 2018, Special Agent Rau submitted the Devices to the DEA's New York Division for forensic analysis.

The government fulfilled its obligation to execute the warrant by submitting the Devices to an off-site forensic facility. This is specifically contemplated in the advisory committee's notes, which detail a "two-step process": a device with electronically stored information is seized or copied on-site, pursuant to a warrant; it is then reviewed at a later date. By sending the devices for off-site forensic analysis, the DEA executed the Warrant. A review of the language of Rule 41

8

reveals that the seizure *or* copying of the Devices satisfied the Warrant. While neither party contends that the Devices were copied prior to the expiration of the Warrant, the Court finds that its submission to the off-site facility constitutes a seizure, as contemplated by Rule 41. As the Advisory Committee explains, the 14-day time limit does not apply to "any subsequent off-site copying or review of the media or electronically stored information." FED. R. CRIM. P. 41(e)(2)(B), cmt. to 2009 Amend. By sending the Devices to an off-site facility for copying and review, the DEA executed the warrant and unburdened itself from the clutches of Rule 41(e).

From a practical perspective, sending them off-site had the same effect as seizing them from the Defendant. At the time the Devices was sent off-site, their contents were frozen in time. Without any evidence that the Devices were accessed prior to their eventual off-site copying, there is no danger that probable cause dissipated during that time.

Contrary to the Defendant's contentions, they were not required to make an on-site copy of the electronically stored information and then send it to the off-site facility for review. Magistrate Judge Brown used the standard template for search warrants, form AO 93. The form commands the recipient to "execute this warrant" before the time specified in the form. As stated above, the two-step approach to searching electronically stored information applies, unless the warrant explicitly provides otherwise. The Warrant did not specify either a date for off-site copying or reviewing the information. Therefore, the Court applies the two-step process and concludes that submitting the Devices for off-site review satisfies the first step as well as the Warrant.

However, even assuming *arguendo* that the DEA violated Rule 41 by failing to copy the Devices within 14 days, pursuant to the Warrant, the Defendant has not alleged that probable cause no longer existed at the time of the off-site copying. Further, he has not demonstrated any

prejudice resulting from the delayed copying, nor has he shown that the DEA intentionally and deliberately disregarded the timing requirement of Rule 41. *See United States v. Pangburn*, 983 F.2d 449, 455 (2d Cir. 1993) (internal citations omitted); *United States v. Triumph Capital Grp.*, 211 F.R.D. 31, 65-66 (D. Conn. 2002) ("The requirements of Rule 41 are basically ministerial in nature and violations of the rule only require suppression where the defendant is legally prejudiced."). As the Second Circuit explained in *United States v. Burke*, 517 F.2d 377, 381 (2d Cir. 1975),

> violations of Rule 41 alone should not lead to exclusion unless (1) there was "prejudice" in the sense that the search might not have occurred or would not have been so abrasive if the Rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision in the Rule.

*Id*. at 386-87.

In the instant case, the delayed copying had no evident prejudice on the Defendant. The eventual search of the electronically stored information would have occurred in the same time frame; there is no evidence that the Devices were accessed after being sent to the lab and before the information was copied; there is no indication that probable cause no longer existed at the time the Devices were copied; and there is no evidence that the DEA intentionally or deliberately disregarded the Warrant's time limit. Without evidence or even allegations that either probable cause was impacted by the delayed execution of the Warrant or that the time to complete the copying was unreasonable, there can be no constitutional violation. *See Triumph Capital Grp.*, 211 F.R.D. at 66 ("[N]either Rule 41 nor the Forth [*sic*] Amendment impose any time limitation on the government's forensic examination of the evidence seized.").

Finally, the good faith exception to the exclusionary rule precludes suppression. "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently capable that such deterrence is worth the price paid by the

justice system." *Herring v. United States*, 555 U.S. 135, 144, 129 S. Ct. 695, 172 L. Ed. 2d 496 (2009); *accord United States v. Payner*, 447 U.S. 727, 734, 100 S. Ct. 2439, 65 L. Ed. 2d 468 (1980) (The Supreme Court has "consistently recognized that unbending application of the exclusionary sanction to enforce ideals of governmental rectitude would impede unacceptably the truth-finding functions of judge and jury."). "[W]hen an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope, … there is nothing to deter." *United States v. Leon*, 468 U.S. 897, 920-21, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984). As no evidence has been put forth supporting the contention that officers did not act in good faith and that the alleged violation is minor, the Court refuses to invoke the extraordinary remedy of suppression.

Accordingly, the Defendant's motion to suppress the information extracted from the Devices is denied.

### IV. THE MOTION FOR A BILL OF PARTICULARS

The Defendant contends that a bill of particulars is required on the ground that he is unable to prepare a defense at trial without additional information. Specifically, Carpenter seeks to know each date he is alleged to have sold cocaine base and each date he used and carried a firearm during the relevant time period. The government responds by asserting that a bill of particulars is unnecessary, and that Carpenter is "improperly attempt[ing] to obtain a detailed preview of the government's evidence and legal theory prior to trial[.]" Dkt. 42 at 12.

Rule 7(f) "permits the defendant to seek a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574

11

(2d Cir. 1987). On the other hand, "[t]he Government may not be compelled to provide a bill of particulars disclosing the manner in which it will attempt to prove the charges, the precise manner in which the defendant committed the crimes charged, or a preview of the Government's evidence or legal theories." *United States v. Sattar*, 314 F. Supp. 2d 279, 318 (S.D.N.Y. 2004) (citing *United States v. Mitlof*, 165 F. Supp. 2d 558, 569 (S.D.N.Y. 2001)). The Second Circuit has held that it is only required "where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *United States v. Feola*, 651 F. Supp. 1068, 1132 (S.D.N.Y. 1987), *aff'd*, 875 F.2d 857 (2d Cir. 1989). The decision whether to grant a defendant's request for a bill of particulars rests within the sound discretion of the district court. *United States v. Panza*, 750 F.2d 1141, 1148 (2d Cir. 1984); *United States v. Urso*, 369 F. Supp. 2d 254, 271 (E.D.N.Y. 2005).

Where the additional facts "'are necessary to appraise the defendant of the charges against him with sufficient precision,' a bill of particulars is appropriate." *United States v. Weinberg*, 656 F. Supp. 1020, 1029 (E.D.N.Y. 1987) (quoting *United States v. Persico*, 621 F. Supp. 842, 868 (S.D.N.Y. 1985)), *overruled on other grounds by Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1064 (2d Cir. 1996). Thus, the Court must determine "whether the information [requested] is necessary, not whether it is helpful to the defendant." *Weinberg*, 656 F. Supp. at 1029 (internal citations omitted); *accord United States v. Ramos*, No. 06 Cr. 172, 2009 WL 602977, at *1 (S.D.N.Y. Mar. 3, 2009) (same). As a result, courts typically "deny requests for bills of particulars concerning the 'wheres, when, and with whoms' of the crime." *Ramos*, 2009 WL 602997, at *1 (internal citations omitted).

A bill of particulars is not a discovery device. District courts are not to use them as a vehicle for compelling the government "to disclose evidence, witnesses, and legal theories to be

offered by the [g]overnment at trial or as a general investigative tool for the defense." *United States v. Henry*, 861 F. Supp. 1190, 1197 (S.D.N.Y. 1994) (internal citations omitted).

While the Court is guided by the precedent set forth by the Second Circuit on this matter, to determine whether a request for a bill of particulars is proper, an analysis of the specific circumstances of this case is required. *United States v. Bin Laden*, 92 F. Supp. 2d 225, 234 (S.D.N.Y. 2000) ("The line that distinguishes one defendant's request to be apprised of necessary specifics about the charges against him from another's request for evidentiary detail is quite difficult to draw. … It is not surprising, therefore, that more than one court [in this district] has observed that the precedents furnish little help in disposing of requests for bills of particulars in criminal cases." (internal citations and quotation marks omitted)).

The Defendant seeks to obtain the dates he is alleged to have sold cocaine base and carried a firearm. Carpenter is not entitled to this information through a bill of particulars. The superseding indictment identifies the approximate dates during which the conspiracy existed. The government is not required to include the dates of the specific events that occurred in furtherance of the conspiracy. A defendant is generally not entitled to the details of the government's conspiracy allegations in a bill of particulars. *United States v. Feola*, 651 F. Supp. at 1132. This is because "[t]he government is not required to prove … exactly when or how a conspiracy was formed or when a particular defendant joined the scheme." *Bin Laden*, 92 F. Supp. 2d at 242 (internal citations omitted). As a result, such requests are consistently denied. *See id*.

Here, the Defendant pursues a list of the specific events the government will use to prove his alleged participation in a conspiracy. The government is not required to disclose this in the indictment and its inclusion in a bill of particulars is improper. *See United States v. Jones*, No. SS85 Cr. 1075, 1986 WL 275, at *2 (S.D.N.Y. May 28, 1986) ("[T]he government need not

13

disclose the specific role(s) played by each defendant in the conspiracy … or the particular acts each defendant is alleged to have participated in, had knowledge of, or for which he is being held responsible. … Nor must the Government disclose in a bill of particulars all of the overt acts it will seek to prove in establishing a conspiracy charge." (internal citations omitted). The approximate dates and duration of the conspiracy is sufficient in this matter.

The superseding indictment sufficiently advises the Defendant of the charges so as to enable him to prepare his defense; to file pre-trial motions; to avoid prejudgment surprise at trial; and to plead the defense of double jeopardy, if subsequently required. The crimes alleged in the indictment are set forth in a clear and easily understood manner. The Defendant's contentions otherwise fly in the face of the indictment and discovery produced in this case.

Accordingly, Carpenter's request for a bill of particulars is denied.

### V.  THE MOTION TO STRIKE FOR SURPLUSAGE

The Defendant moves to strike the allegation that he is also known as "Kontraversy" from the superseding indictment.

Rule 7(d), provides in pertinent part that "[t]he court on motion of the defendant may strike surplusage from the indictment." FED. R. CRIM. P. 7(d). A motion to strike pursuant to Rule 7(d) will only be granted if "it is clear that the allegation complained of is not relevant to the charge contained in the indictment and is inflammatory and prejudicial." *United States v. Klein*, 124 F. Supp. 476, 479-80 (S.D.N.Y. 1954), *aff'd*, 247 F.2d 908 (2d Cir. 1957). Any allegation that is "relevant to the case and will constitute part of the government's proof at trial" may be included in an indictment. *United States v. Esposito*, 423 F. Supp. 908, 911 (S.D.N.Y. 1976).

A defendant's aliases are properly included in the indictment if they will be used in the government's case, even if they come with a degree of prejudice. *See United States v. Miller*, 381

14

F.2d 529, 536 (2d Cir. 1967); *United States v. Rittweger*, 259 F. Supp. 2d 275, 279 (S.D.N.Y. 2003) ("Aliases and nicknames should not be stricken from an incitement when evidence regarding those aliases or nicknames will be presented to the jury at trial."); *United States v. DePalma*, 461 F. Supp. 778, 797 (S.D.N.Y. 1978) ("[I]f evidence of the allegation is admissible and relevant to the charge, then regardless of how prejudicial the language is, it may not be stricken.").

The government contends that the Defendant's alias appears on the Devices as well as a music video where he is purportedly brandishing a firearm. The firearm allegedly carried by the Defendant in the music video is supposedly the same firearm that was recovered at the scene of Carpenter's arrest. The Defendant's alias is therefore relevant to the charges against him. If the government fails to introduce proof that this alias is relevant to its proof at trial, the Court will entertain a motion to strike it at the conclusion of the government's case.

Accordingly, the Defendant's motion to strike his alias from the superseding indictment is denied.

## VI.  CONCLUSION

The Defendant's motion is denied in its entirety.

It is **SO ORDERED**:

Dated: Central Islip, New York

December 28, 2018

　　　　　　　　　　　　　　　　　　　　*/s/ Arthur D. Spatt*

　　　　　　　　　　　　　　　　　　　　ARTHUR D. SPATT

　　　　　　　　　　　　　　　　　　　　United States District Judge