# Federal Defenders
## OF NEW YORK, INC.

770 Federal Plaza, Central Islip, NY 11722
Tel: (631) 712-6500 Fax: (631) 712-6505

**David E. Patton**
*Executive Director and Attorney-in-Chief*

**Randi L. Chavis**
*Attorney-in-Charge Long Island*

January 11, 2019

Honorable Arthur D. Spatt
Sr. United States District Court Judge
1024 Federal Plaza
Central Islip, New York 11722

      Re:  United States v. Larry Carpenter
           Criminal Docket No. 18 CR 362 (S-2)

Dear Judge Spatt:

The defense respectfully submits this letter in response to the government's motion *in limine* filed on January 2, 2019. The government seeks to admit evidence of song lyrics and music videos. The government also seeks admission of so-called consciousness of guilt evidence and it requests permission to allow its undercover officer and confidential informant to hide their identities at trial. The government's motion *in limine* should be denied.

Rap Lyrics, Music Videos and Interview Should Be Excluded

The videos and lyrics which the government seeks to introduce should be excluded 1) pursuant to Fed. R. Evid. 401 because they are not relevant to the charges against Mr. Carpenter; 2) pursuant to Fed. R. Evid 403 due to the danger of unfair prejudice and of confusing or misleading the jury; and 3) pursuant to Fed. R. Evid. 404 as inadmissable character evidence. Count One charges Mr. Carpenter with being a member of a conspiracy to distribute and possess with intent to distribute both heroin and cocaine base between September 2015 and September 2018. There are no named co-conspirators found in Count One or any other count of this indictment. To date, the government has not identified any individual or individuals who participated in this alleged conspiracy with Mr. Carpenter nor provided us with any discovery which identifies any co-conspirators. Mr. Carpenter has already pled guilty to selling heroin and cocaine base on June 24, 2018. The government wants to prove a conspiracy where none exists, with rap lyrics and music videos.

The government contends the lyrics and videos are admissible under more than one theory. The first theory offered is that the lyrics and videos are statements of the defendant admissible under Fed. R. Evid.

801(a). The second theory is that the lyrics are direct evidence of the charged crimes admissible under Fed. R. Evid. 401. The first theory offered, that the statements are admissible under Fed. R. Evid. 801(a), is not supported by any of the cases to which the government cites. In both *United States v. Dore*, 2013 Westlaw 3965281 (S.D.N.Y. 2013) and *United States v. Foster*, 939 F.2d 445 the Courts' decisions to admit the video and verse, respectively, are based on analyses of Fed. R. Evid. 404(b). In *Foster*, the Court said it would "not address" the application of Rule 801(d)(2) in light of its conclusion the verse was admissible under Rule 404(b). In *Dore*, the Court mentioned the video "might" be admissible under Rule 801(d)(2)(A) but relied on a Rule 404(b) analysis to determine the video's admissibility. *United States v. Dupre*, 462 F.3d 131 (2d Cir. 2006) does not even deal with video or verse statements made by a defendant. Rather, it deals with third party statements received by defendants. The government has not identified any third parties known to Mr. Carpenter nor the relevance of any statements such third parties may have made.

The government's second theory is that the lyrics and videos are admissible under Fed. R. Evid. 401. The cases cited by the government actually underscore why the videos and lyrics in this case should be excluded. In *United States v. Dore*, 2013 WL 3965281 (S.D.N.Y. 2013) a video was played for the jury showing Dore and one of his co-defendants at trial, along with another individual, acting out an armed robbery. In discussing his decision to allow the introduction of the video, Judge Sullivan noted, among other reasons, the video was relevant to establish the existence of "the relationship of trust" between the co-defendants. In *United States v. Wilson*, 493 F.Supp.2d 460 (E.D.N.Y. 2006), the lyrics written by Wilson himself were admitted by Judge Garaufis who found them relevant because "they describe activity that resembles aspects of the central crime . . . and appear to have been written after that crime was committed." The other lyrics were relevant, Judge Garaufis said, because they were found on a computer of one individual and in the home of another individual, making them useful in determining whether an enterprise existed that Mr. Wilson was a part of. In *United States v. Rivera*, 2015 WL 1757777, Judge Matsumoto found the proferred videos "generally relevant to proving the existence of the enterprise and the relationships between its members." *Rivera,* pg. 5. However, there the video evidence was of "conversations between defendants, co-conspirators and other witnesses." *Id*. All of these cases have the same thing in common: the actual presence of other individuals the government claimed were involved in conspiratorial behavior, be it on the videos themselves or in possession of the lyrics sought to be introduced.

In this case, the video and lyrics can not be relevant to a conspiracy which has not been shown to exist. The videos and lyrics do not demonstrates a relationship of trust or any kind of relationship

Page 2

between any other actual individuals involved in possessing or distributing narcotics together with Mr. Carpenter. Singing about being in the drug business is a common theme of rappers. Between 1979 and 1993, lyrics glorifying drug use and referring to drugs increased from 11 per cent of rap songs to an astonishing 69 per cent of songs. https://abcnews.go.com/Health/Healthday/story?id=4569665&page=1. With no evidence of real people engaging in actual conduct to facilitate a drug conspiracy with Mr. Carpenter, the government's contention that the videos and lyrics are direct evidence is nothing more than a bald assertion of their theory of prosecution. Allowing these videos and lyrics to serve as the gravamen of the government's case would be an impermissible use of music and lyrics meant as entertainment and free expression.

Mr. Carpenter also objects to the use of the proposed rap videos and lyrics on the grounds that, even if the Court found they had probative value, that value is far outweighed by the danger of unfair prejudice. Fed. R. Evid. 403. The material sought to be admitted is replete with references to "nigga and niggaz." This is an inflammatory, toxic word with incendiary associations. Regardless of who is using the word, it will undoubtedly be perceived by the jury as racist and inflammatory. The lyrics also include the sentence, "I bought that bitch a new ass and titties." In today's rightfully sensitive climate, such words are misogynistic and demeaning to women. Even though much rap music commonly glories criminal activity, especially concerning drugs, any juror is certain to be prejudiced by the content of these proposed exhibits. "The Supreme Court, considering Rule 403, has explained the term 'unfair prejudice, as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the fact finder into declaring guilt on a ground different from proof specific to the offense charged,' or in other words, 'an undue tendency to suggest decision on an improper basis.'" *United States v. Awadallah*, 436 F.3d 125, 133 (2d Cir.2006) (quoting *Old Chief v. United States*, 519 U.S. 172, 180, 117 S.Ct. 644 (1997). This is exactly what Rule 403 is meant to guard against. The artistic bravado glorifying criminal activity seen in these videos and lyrics is likely to prejudice the jury against Mr. Carpenter leading them to be less concerned about the strength of the government's case and more dismayed about his character. *State v. Skinner*, 218 N.J. 496 (2014).

The government seeks to introduce videos to attempt to prove that what looks like a gun in the video is the same gun taken from the car in which Mr. Carpenter was a passenger. The government should not be allowed to use the video as proof. How many of us have watched movies where there appears to be bombs exploding, knives thrown and guns being shot. These are nothing more than movie props. Clint Eastwood holding a 357-magnum gun in "Dirty Harry" does not prove Clint Eastwood has access to guns. Similarly, John Wayne shooting a Colt revolver in "True Grit" does not prove he has access to guns. The

gun may look real, which is the whole idea behind movies and videos, and not be real.  The government would certainly have to prove that what looks like a gun in the music video is actually a gun to make their argument valid. In *Dore*, The defendants "never contested that the Mercedes-Benz was under Barrett's custody and control," so it was not difficult for Judge Sullivan to conclude that "the video demonstrated ()Barrett's possession and control over the same Mercedes-Benz that the evidence at trial showed was used in the commission of various robberies alleged in the conspiracy…" *Dore*, 2013 U.S. Dist. LEXIS 110621 at *21.

<u>The Court Should Not Admit So-Called Consciousness of Guilt Evidence</u>

The government seeks to introduce evidence it alleges shows an attempt by Mr. Carpenter to obstruct justice. In all of the cases cited by the government, the defendant was charged in the indictment with obstruction of justice, so that the offered testimony and evidence went directly to the issue of the defendant's guilt of the charges. That is not our case. The government should have to proffer what, precisely it seeks to introduce so the Court can make a determination under the 403 balancing test.

<u>The Court Should Not Allow the Undercover and the Informant to Hide Their Identity and Testify Anonymously</u>

The defense opposes the government's motion that its UC and CI testify anonymously, using numbers instead of a name, and precluding the defendant from inquiring about their identity and past and present investigations. *See* Gov.1/2/19 In Lim at 8.

The Sixth Amendment guarantees the fundamental right of a criminal defendant to confront the witnesses against him.  *See Pointer v. Texas*, 380 U.S. 400 (1965).  This right includes cross-examination. *See, e.g. Davis v. Alaska*, 415 U.S. 308, 315 (1974).  A serious infringement on the right to confrontation and cross-examination occurs when a prosecution witness testified under a false name and fails to provide an address.  *Smith v. Illinois*, 390 U.S. 129, 130, 133 (1968).  The Supreme Court has stated:

> [W]hen the credibility of a witness is at issue, the very starting point in exposing falsehood and bringing out the truth through cross-examination must necessarily be to ask the witness who he is and where he lives.  The witness' name and address open countless avenues of in-court and out-of-court investigation.  To forbid this most rudimentary inquiry at the threshold is effectively to emasculate the right of cross-emanation itself.

Id. at 131.

Since the "denial or significant diminution [of the right to confront and to cross-examine] calls into question the ultimate integrity of the fact-finding process, "any competing interest [must] be closely examined." *Chambers v. Mississippi*, 410 U.S. 284, 295 (1973); *see also Alford v. U.S.*, 282 U.S. 687, 694 (1931). A restriction on cross-examination is unconstitutional if it is "arbitrary or disproportionate to the purposes [it is] designed to serve." *Rock v. Arkansas*, 483 U.S. 44, 56 (1987). The government bears the burden of showing" legitimate reasons for a limitation on cross-examination." *Washington v. Walsh*, 2010 WL 423056, at *6 (S.D.N.Y. Feb. 5, 2010); *see also U.S. v. Palermo*, 410 F.2d 468, 472 (7th Cir. 1969).

The government cannot meet it burden here. Its argument is that hiding the UC's and CI's identity will protect "the integrity" of ongoing investigations and their physical safety. See Gov.1/2/19 In Lim at 8. But the severe limit on the defendant's fundamental right to confrontation and cross-examination is disproportionate to the intended purpose.

Courts have taken seriously the risk to anyone's safety. But the type of threat to a witness that might justify limiting cross-examination "must be actual and not the result of conjecture." *U.S. v. Palermo*, 410 F.2d 468, 472 (7th Cir. 1969); *see also U.S. v. Fenech*, 943 F. Supp. 480, 488 (E.D. Pa. 1996)(prejudicial error occurred when "the Government's informant witness testified under a false name allegedly to ensure his safety," but "the record contain[ed] nothing to suggest that the witness had been threatened and [was] void of an indication that the witness was in danger.").

The government here, while invoking the UC's and CI's safety, makes no claim that they have faced any actual threats, whether in the present case or any other. Similarly, the government cites the defendant's past criminal convictions, the nature of the case and an alleged connection to the Bloods street gang, but this is nothing more than mudslinging without a basis. The government does not present the slightest of specifics about any conviction, which points to the defendant doing harm to or threatening harm to any witness. In the instant case, although the government is accusing the defendant of possessing a weapon, the government is not alleging that he drew this gun on anyone or otherwise actively used it. The Drug Enforcement Agency (DEA) contradicts the prosecution's unsubstantiated allegation that the defendant is somehow connected to the Bloods street gang. *See Exhibit A, attached DEA form 202 p.2-3. (No. 52-57 gives the case agent the opportunity to write down the name of any*

*criminal organization the arrested person belongs to. These items are blank for Mr. Carpenter.)*[1]

The government wants to be able to disclose the UC's and CI's identities to the defense counsel, "to allow the defense to investigate the CWs' background, but "preclude the defense from cross-examining the CWs about any topics related to the CWs' true identities' and/or the CWs' current and past investigations…" *See* Gov.1/2/19 In Lim at 8. The government is asking the court to put its imprimatur upon a sham – allow the defense to investigate, but use nothing we uncover to cross-examine the witnesses.

The cases cited by the government do not support its position. In *United States v. Watson*, 599 F.2d 1149 (2d Cir. 1979) the witness, Diamond, was actually in the Witness Protection Program, threats and attempts had been made on his life and counsel was allowed to cross-exam him on his extensive criminal background. In *United States v. Cavallaro*, 553 F.2d 300 (2d Cir. 1977), the Court stated that "[t]he address of a government witness is generally a proper subject of defense inquiry and may be necessary for in-and-out-of-court investigation of a witness. *Cavallero* at 304 (citation omitted). In Cavallero, however, the witness was the victim of a kidnapping and the defendants were "at large on bail, and was true here, the possibility of foul play is obvious." *Id* at 304-05. The Court recognized that these particularized facts formed the basis of a "legitimate concern" by the government.

The Supreme Court has addressed this limitation and determined it was invalid. In *Smith v. Illinois*, 390 U.S. 129 (1968), the Supreme Court reversed the defendant's conviction for narcotics sale because he was deprived of the constitutional right of confrontation when cross-examination of a prosecution witness was restricted. The Court, citing its decision in *Pointer v. Texas*, 380 U.S. 400, 403 stated, "`It cannot seriously be doubted at this late date that the right to cross-examination is included in the right of an accused in a criminal case to confront the witnesses against him.'" "Even more recently we have repeated that "`a denial of cross-examination without waiver… would be a constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it.'" *Smith* at 131 *citing Brookhart v. Janis*, 384 U.S. 1, 3. "The witness' name and address open countless avenues of in-court examination and out-of-court investigation. To forbid this most rudimentary inquiry at the threshold is effectively to emasculate the right of cross-examination itself." *Id*.

---

[1] DEA form 202 is government Bates stamped 37-39. I request permission to file this exhibit under seal because it contains personal identifying information. Exhibit A will be provide to the court, however, with a courtesy copy of this response.

Conclusion

For all of the foregoing reason, the defense respectfully asks that the Court deny the government's motion to admit rap lyrics and music videos, so-called consciousness of guilt evidence, and not allow the undercover officer and the confidential informant to testify anonymously.

                      Respectfully submitted,

                      *Tracey L. Gaffey*
                      Assistant Federal Defender
                      (631) 712-6500

cc:   Monica K. Castro
      Assistant U.S. Attorney

      Clerk of the Court

      Mr. Larry Carpenter