FILED
CLERK
10:22 am, Feb 25, 2019
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
UNITED STATES OF AMERICA,

          -against-                          MEMORANDUM OF
                                           DECISION & ORDER
LARRY CARPENTER,                         18-cr-362 (ADS)

          Defendant.
----------------------------------------------------------X

**APPEARANCES:**

**United States Attorney's Office, Eastern District of New York**
610 Federal Plaza
Central Islip, NY 11722
     By:    Monica K. Castro, Assistant U.S. Attorney

**Keahon, Fleischer, Duncan & Ferrante**
1393 Veterans Memorial Highway, Suite 312 North
Hauppauge, NY 11788
     By:    Joseph J. Ferrante, Esq., Of Counsel

**Federal Defenders of New York, Inc.**
610 Federal Plaza
Central Islip, NY 11722
     By:    Tracey L. Gaffey, Assistant Federal Defender


**SPATT, District Judge**:

     Presently before the Court is a motion *in limine* by the United States (the "Government") seeking preliminary determinations as to the admissibility of (1) song lyrics and music videos; and (2) Larry Carpenter's ("Carpenter" or the "Defendant") purported efforts to obstruct justice. For the following reasons, the Government's motion is granted as set forth below.

## I. BACKGROUND

The facts of this case were accurately set forth multiple times by the Court in this action, and need not be repeated in their entirety. For purposes of the instant Decision and Order, it is sufficient to note the following facts.

The Defendant is currently charged with conspiring to distribute heroin and cocaine base between September 2015 and June 2018 ("Count One"); using a firearm in furtherance of the sale of heroin and cocaine base on June 24, 2018 ("Count Two"); and being a felon in possession of a firearm ("Count Three"). These charges stem from Carpenter's arrest on June 24, 2018 after selling cocaine base and heroin to an undercover law enforcement operative and another party. Both sales were consummated while the Defendant was seated in the passenger seat of a vehicle owned by a female acquaintance (the "Vehicle"). At the time of Carpenter's arrest, a .38 caliber revolver and two cellular devices—one LG phone ("Device One") and one iPhone ("Device Two") (collectively, the "Devices")—were recovered from the passenger seat of the Vehicle.

## II. THE RAP VIDEOS & LYRICS

The Government seeks a preliminary finding regarding the admissibility of song lyrics and music videos that allegedly provide direct evidence of the charged crimes.

In its case-in-chief, the Government expects to introduce video evidence—two music videos and an interview—and song lyrics found on Device Two. Carpenter is an aspiring rap artist who operates under the stage name "Kontraversy."

**A. Relevance**

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED R. EVID. 401. However, "the court may exclude relevant evidence if its probative value is

substantially outweighed by a danger of … unfair prejudice[.]" FED R. EVID. 403; *United States v. Quattrone*, 441 F.3d 153, 186 (2d Cir. 2006) ("All evidence introduced against a defendant, if material to an issue in the case, tends to prove guilt, but is not necessarily prejudicial in any sense that matters to the rules of evidence." (internal citations omitted)).

"Federal courts across the country, including those in this circuit, have found rap lyrics or videos to be relevant evidence in criminal trials based on the content of the evidence and the issues in the case." *United States v. Herron*, No. 10-CR-0615, 2014 WL 1871909, at *3 (E.D.N.Y. May 8, 2014) (collecting cases). The Second Circuit has held that "[r]ap lyrics … are properly admitted … where they are relevant and their probative value is not substantially outweighed by the danger of unfair prejudice." *United States v. Pierce*, 785 F.3d 832, 841 (2d Cir. 2014). In *Pierce*, the district court admitted rap videos which helped establish (1) motive to participate in the charged conduct; and (2) the relationships between members of an enterprise. *Id*. at 840-41. Yet, "circuit courts have admonished trial judges against admitting rap videos or lyrics with merely a tenuous connection to the defendant or issues in the case." *Herron*, 2014 WL 1871909, at *4 (collecting cases).

The Defendant argues that all of the proposed music videos and lyrics are irrelevant to the issues in this case. The Court has reviewed three videos provided by the Government. In one video, "Young Bonnie," the Defendant appears to be carrying a firearm throughout the video and singing about the drug business. In another video, "Might Not Make it Home," the Defendant seems to be brandishing a firearm that the Government contends is the firearm recovered in connection with the Defendant's arrest and referenced in Count Three of the indictment. The third video, the "Tee-Talk Interview," depicts an interview where the Defendant discusses his music and background. The interviewer inquires as to the authenticity of his music, to which Carpenter

3

responds: "authenticity, that's number one. A lot of things I'm talking about—every single thing I'm talking about, I've been through it. I did it, I seen it with my own eyes. Not some stories that I heard, or a nigga that I knew. I'm part of it and I've been through it." With respect to the rap lyrics, the Government has provided the Court with a sampling of proposed song lyrics.

After reviewing the above-mentioned material, the Court finds the content of the music videos and song lyrics to be generally relevant to the issues presented in this case. The government maintains that the videos and lyrics refer to individuals involved with the Defendant in drug trafficking; explains the Defendant's preferred process for preparing and delivering drugs; show knowledge of the vocabulary and environment of the drug trade; and refer to the minimum quantity of illegal drugs that the Defendant sold to a given customer. Evidence supporting these contentions corroborate the alleged drug trafficking conspiracy and the weight of illegal drugs sold during the conspiracy. All of this is potentially relevant to Count One of the superseding indictment.

Further, some of the videos and lyrics depict and describe the Defendant possessing and brandishing a weapon. Some even describe Carpenter's reasoning for purportedly carrying a weapon in furtherance of trafficking and selling illegal drugs. In the "Might Not Make it Home" video, the Defendant is shown brandishing a weapon that the government contends is the .38 revolver recovered from the passenger seat of the Vehicle. This evidence is relevant to Counts Two and Three of the superseding indictment.

**B. Prejudice**

Carpenter contends that even if the videos and lyrics have probative value, that value is outweighed by the danger of unfair prejudice. "The Term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v.*

*United States*, 519 U.S. 172, 180, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997). "[E]vidence is unduly prejudicial only when it tends to have some adverse effect upon a defendant *beyond* tending to prove the fact or issue that justified its admission into evidence." *United States v. Kadir*, 718 F.3d 115, 122 (2d Cir. 2013) (internal citations omitted) (emphasis in original). Under Rule 403, if the evidence "did not involve conduct more inflammatory than the charged crime," it is generally not unduly prejudicial. *United States v. Paulino*, 445 F.3d 211, 223 (2d Cir. 2006) (internal citations omitted). These videos and lyrics undoubtedly contain profanity, misogyny, and other references that many individuals might find objectionable. However, the content is not "more inflammatory" than the crimes charged in the superseding indictment—conspiring to distribute heroin and cocaine base and weapons possession. *Id*. Accordingly, as a general matter, the probative value of the evidence is not substantially outweighed by a danger of unfair prejudice.

### C. The First Amendment

The Defendant asserted in oral argument that the admission of his song lyrics and music videos into evidence would violate his First Amendment right to free expression. *See* Transcript of Oral Argument ("Transcript") at 27 (To turn around now and use my client's life work because he makes reference to a gun, or he makes reference to the street drug trade, and to let a jury hear that is highly prejudicial and far against the freedom of speech and freedom of artistic expression."). This argument has no merit. As the Supreme Court has ruled, "[t]he First Amendment … does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent." *Wisconsin v. Mitchell*, 508 U.S. 476, 489, 113 S. Ct. 2194, 124 L. Ed. 2d 436 (1993). While the government may not weaponize a defendant's speech in order to paint him as "morally reprehensible," that is not at issue here. *United States v. Fell*, 531 F.3d 197, 229 (2d Cir. 2008) ("The crucial question is whether the evidence at issue was used for permissible

5

purposes or merely to show that [the defendant] was morally reprehensible due to his abstract beliefs." (internal citations and quotation marks omitted)). The Government's intention to introduce them as direct proof of the Defendant's charged crimes go far beyond merely portraying him as "morally reprehensible."

The Court further notes that the Defendant's "slippery slope" argument fails to recognize the importance of context in determining the admissibility of artistic work. *See* Transcript at 29 ("I printed out several different lyrics from several different artists, Bruce Springsteen: Killing people with a .44, Bob Marley: Shooting the sheriff, Johnny Cash: Killing someone in Reno just to see him die. These are not things that should come in to trials against people for actual crimes. These are artistic expression[s]."). The Defendant attempts to use Bob Marley's "I Shot the Sherriff" and Johnny Cash's "I Shot a Man in Reno" as hypothetical examples of fictional work that would be irrelevant in a criminal trial and a threat to an author's artistic expression.

Yet these examples only support the Defendant's claim if Bob Marley or Johnny Cash were on trial for circumstances that were not directly related to either act described in their music. If Johnny Cash had ever been charged with murdering a man in Reno, the prosecution would have likely been able to introduce Cash's lyrics as evidence that the murder was premeditated. On the other hand, if Cash was charged with accidentally stabbing a man in Las Vegas, the prejudicial impact of using Cash's discussion of an unrelated fictional crime in one of his songs would far exceed any potential probative value. In another hypothetical example, if Marshall Bruce Mathers III, more commonly known as Eminem, was on trial for the murder of his ex-wife, the Government could introduce lyrics to the song "Kim," which describes Mathers' intense anger and odium towards his then-wife, as evidence of potential motive and premeditation. Finally, if the rapper 50 Cent was accused of unlawfully possessing a weapon, and the Government alleged that the weapon

at-issue was the same weapon he used in his music video "Funeral Music," it would likely be admissible to show that the rapper had access to the weapon. Artistic work that refers to a specific act or motive that can be tied back to the alleged crime can be highly probative evidence. The work's connection to the crime and the circumstances of the government's request determine if such a work is ultimately admissible. As the Seventh Circuit notes, albeit in dicta,

> [m]uch of [the defendant]'s argument on this point is … of limited usefulness because, to answer his concerns by the same type of analogy, admitting [a] rap verse was not the equivalent of admitting *The Godfather* as evidence that Mario Puzo was a mafia don or admitting "The Pit and the Pendulum" as evidence that Edgar Allen Poe had tortured someone. It was, instead, the equivalent of admitting *The Godfather* to illustrate Puzo's knowledge of the inner workings of an organized crime family and admitting "The Pit and the Pendulum" to illustrate Poe's knowledge of medieval torture devices.

*United States v. Foster*, 939 F.2d 445, 456 (7th Cir. 1991). Carpenter may argue that he took certain creative licenses with his music at trial, but this goes to the weight of the evidence, rather than to admissibility.

The Court finds that the Government's proposed use of the Defendant's lyrics and music videos does not implicate the protections enshrined in the First Amendment.

### D. Procedure for Admitting Evidence

While the Court denies the Defendant's attempt to preclude all of the music videos and rap lyrics at issue, the Court is also hesitant to grant the government an unrestricted license to use this content at trial. While the videos and lyrics as a whole are relevant and not unfairly prejudicial, select portions of them may subject the Defendant to unfair prejudice with minimally relevant portions of the material. Accordingly, the Court will adopt a modified version of the procedures articulated by Judge Garaufis in *Herron*.

In order to admit a video or lyric into evidence, the Government shall provide the Defendant and the Court with the specific excerpt that it intends to present at trial. For each

7

excerpt, the Government shall state the purpose for which the evidence is being offered and, in the case of a video, provide a transcript identifying the speakers in the clip. The Court will not allow statements by persons other than the Defendant to be offered for the truth of the matter asserted unless the Government provides a relevant exception under Rule 803. The Government must provide this material on or before March 1, 2019.

If the Defendant has any objection to the admission of that particular clip or lyric, Carpenter may submit a response on or before March 7, 2019. The Defendant is also free to submit a proposed limiting instruction concerning any of the excerpts of videos or lyrics admitted into evidence.

### III. EFFORTS TO OBSTRUCT JUSTICE

The Government also seeks a ruling on the admissibility of evidence in the form of emails and jail calls that purportedly demonstrate the Defendant's efforts to obstruct justice. The Defendant objects to the introduction of this evidence because Carpenter has not been charged with obstruction of justice.

The Second Circuit has found that evidence of obstructive conduct is admissible to demonstrate a Defendant's consciousness of guilt. *See United States v. Triumph Capital Grp., Inc.*, 544 F.3d 149, 160 (2d Cir. 2008); *United States v. Malpiedi*, 62 F.3d 465, 467 (2d Cir. 1995); *United States v. Zhong*, No. 16-CR-614, 2018 WL 6186474, at *8 (E.D.N.Y. Nov. 26, 2018). In the instant case, the Government looks to introduce evidence that the Defendant instructed his associates to remotely wipe Device Two and delete the "Might Not Make it Home" video at issue in the previous section of this Decision & Order. This conduct is probative of the Defendant's consciousness of guilt. To ensure that the probative value far outweighs any potential risk of prejudice or confusion, the Court will entertain a proposed limiting instruction to the jury.

Accordingly, the Government's motion to admit evidence relating to the Defendant's obstructive conduct to show consciousness of guilt is granted.

### IV. CONCLUSION

For the foregoing reasons, the Government's motion *in limine* is granted as set forth above. The music videos and rap lyrics shall be admitted into evidence subject to the procedures outlined above. Further, the Court will allow the Government to introduce evidence at trial relating to the Defendant's obstructive conduct. As the parties indicated during oral argument that they would likely come to an agreement on the remainder of the issues in the Government's motion, *see* Transcript at 38-43, the Court declines to rule on them here.

It is **SO ORDERED**:

Dated: Central Islip, New York

February 25, 2019

                                                    __/s/ Arthur D. Spatt__

                                                    ARTHUR D. SPATT

                                                    United States District Judge